### Bud Haley v. The State.

No. 610.   Decided May 18, 1910.

**1.—Assault to Murder—Evidence—Motion for New Trial—Newly Discovered Evidence.**

Where, after conviction of assault with intent to murder, defendant's amended motion for new trial set out that the main State's witness had sworn falsely in the trial of the cause, and offered proof that two of the jurors would not have found defendant guilty if they had had a reasonable doubt as to the truthfulness of State's witness; the same did not come under the head of newly-discovered evidence.

**2.—Same—Motion for New Trial—Fair and Impartial Jury.**

Where defendant's motion for new trial alleged that one of the jurors had not resided in the county of the prosecution for six months, but there was no statement what effort was made to discover this fact, and no distinct statement that said disqualification was in fact unknown to counsel for defendant, or that as a matter of fact the juror had not resided in said county for six months, the same was properly overruled.

**3.—Same—Credibility of Witness—Question of Fact.**

The credibility of a State's witness is a matter for the jury and is not a ground for reversal.

Appeal from the District Court of Robertson. Tried below before the Honorable J. C. Scott.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.—On question of newly discovered evidence: Fisher v. State, 30 Texas Crim. App., 502; West v. State, 2 Texas Crim. App., 209; Shaw v. State, 27 Texas, 750.

RAMSEY, Judge.—This appeal is prosecuted from a conviction had in the District Court of Robertson County on the 27th day of January

of this year, where appellant was found guilty of assault with intent to murder, and his punishment assessed at confinement in the penitentiary for two years.

The indictment charges the assault to have been made upon one Paul Merka on or about the first day of January, 1910. The testimony shows, in brief, that Merka was at and before the act of the assault in the station room of the railway, late in the evening or early part of the night on the day in question, and that he and appellant had some little trouble. Soon after this, according to Merka's testimony, who was somewhat intoxicated, he was knocked in the head, and his skull fractured or at least a portion of the bone of his skull removed therefrom by the blow. Tom Cramer testifies that he saw appellant strike Merka with something in his hand, saw the man fall, and that appellant immediately thereafter ran away. Appellant testified in his own behalf, and, in substance, testifies to a case of self-defense. Merka was shown to have been a drinking man, quarrelsome, violent and turbulent. This is the substance of the testimony in the case. The court gave a correct charge submitting all the issues pertinently arising under the evidence to the jury. This charge is not complained of in the motion in any respect.

1. Among the grounds urged as a basis for new trial is the action of the court in refusing to hear certain testimony offered by appellant on his motion for new trial. The bill of exceptions recites that when appellant's amended motion for new trial came on to be heard, and in the course of hearing same appellant offered to prove that the main State's witness Sug Cramer was not present at the time of the alleged offense, and had sworn falsely in said cause; and further, that he offered to prove by two of the jurors that if the witness Cramer had not testified in said cause, or if they had had a reasonable doubt as to the truthfulness of his testimony, that they would not have agreed to a verdict of guilty in said cause. We know of no authority of law for thus attacking the verdict of the jury, or of any statute which permits it. Attached to appellant's motion were some affidavits touching this matter, but we think these allegations were more than met and disproved by testimony offered by the State and incorporated in the record. It can not, in any view as presented, be said that this testimony was newly discovered. Before the court would be authorized to grant a new trial on newly discovered evidence, it is indispensable that it should be shown that the testimony had come to his knowledge since the former trial, and that there was not wanting any diligence on his part that it was not discovered earlier; that the testimony was competent and material, and not merely cumulative, corroborative, or collateral, and that it would probably produce a different verdict if a new trial is granted, and that such testimony is not simply for the purpose of impeaching a witness. Tested by any

of the well settled rules, the motion for new trial on this ground was manifestly insufficient.

2. In another ground of the motion for new trial it is averred that appellant was not tried by a fair and impartial and duly qualified jury in that one of the jurors, Charles Jackson, who sat upon the jury had not resided in Robertson County six months as required by law to make him a qualified juror. The averment is further made "That the fact of the disqualification of said juror was not at the time of impaneling of said jury known to defendant or his counsel; that the answers of said juror to questions propounded to him by the court were supposed by the defendant and his counsel to be true, and they did not therefore feel that diligence required them to interrogate said juror upon questions to which he had already made answer to the court." There is nothing in the record to show what, if any, statement the witness made touching his residence, what effort was made to discover this fact; nor is there any distinct statement that the fact alleged as a ground of disqualification was unknown to counsel for appellant; nor is there any direct proof, as a matter of fact, that the juror had not resided in the county more than six months. It is stated by one of the witnesses, that "on the Monday morning following the trial of this cause, upon being examined on his voir dire, it developed that said Charles Jackson had not resided in Robertson County for a period of six months, and the court held him disqualified to sit as a juror. We think, as presented, that we would not be authorized to reverse the conviction on this account.

3. Finally, the motion alleges that the witness Cramer was untruthful and an enemy of appellant, and that this fact was unknown to him and his counsel. The credibility of this witness was, of course, a matter for the jury, and it would be a singular procedure to invalidate verdicts and judgments on allegations and grounds such as these. A careful examination of the record has convinced us that there is no ground on which we would be authorized to reverse the judgment, and it is therefore affirmed.

*Affirmed.*